ORDERED.

Dated: August 6, 2013



Eileen W. Hollowell, Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

In re:  ) Chapter 11
) 
) Case No. 4:13-bk-00851-EWH
250 AZ, LLC, )
) **MEMORANDUM DECISION**
Debtor. )
)

## I. INTRODUCTION

The sole issue to be decided in this memorandum decision is whether a number of prepetition assignments to Debtor of tenancy-in-common interests were effective. For the reasons explained in the balance of this decision, they were not.

## II. FACTS

Debtor filed a Chapter 11 petition on January 22, 2012 ("Petition Date") in which it listed interests in real property located in Tucson, Arizona and Cincinnati, Ohio. The Cincinnati property ("Chiquita Center")[1] was acquired in 2006 by a number of tenants in common ("TICs"). A Tenants in Common Agreement ("TIC Agreement") executed in 2006 governs the TICs.

---

[1] The Chiquita Center is a 29-story office building located on real property which is subject to a ground lease.

1

Section 12.15.2 of the TIC Agreement makes any lender secured by the Chiquita Center a third-party beneficiary of the TIC Agreement and provides the lender with the right to enforce the terms and conditions of the TIC Agreement. Section 7 of the TIC Agreement governs the assignment of a TIC interest. It permits assignment subject to compliance with several conditions, including complying with the terms of any loan secured by the Chiquita Center.

In October 2006, Wachovia Bank, National Association made a $65 million dollar loan ("Loan") to the TICs. The Loan is secured by an Open-End Leasehold Mortgage, Security Agreement and Fixture Filing ("Mortgage"). Section 2.9 of the Mortgage prohibits any transfer of a TIC interest without lender's written consent. The Loan was later assigned to Wells Fargo Bank as Trustee of a securitized trust ("Trust").

Some, but not all, of the TICs assigned their TIC interests ("Assignments") to Debtor shortly after its formation in November 2012. (The assignment of the TIC interests to Debtor will be referred to as the "Rollup.") Neither Debtor nor any of the assigning TICs obtained the Trust's consent to the Rollup.

According to Debtor, the Rollup resulted in the Chiquita Center being owned by four TICs (including Debtor), each holding a percentage interest in the Chiquita Center and each being jointly and severally liable on the Loan. Debtor claims that as of the Petition Date, it held an 84.7% TIC interest in the Chiquita Center.

### III. ISSUES

Were the Assignments effective?

### IV. STATEMENT OF JURISDICTION

Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331(b) and 157(b)(2)(A).

2

## V. **DISCUSSION**

The issue to be decided is whether the Rollup was effective notwithstanding the failure of the assigning TICs to comply with § 7 of the TIC Agreement.[2] Assuming, without deciding, that as part of the Rollup the assigning TICs and the Debtor waived the requirements of § 7 of the TIC Agreement, such a waiver could not make the Assignments effective. There are two reasons for this conclusion.

First, the Roll-up did not include all of the TICs. As a result, there was not a complete waiver of § 7. The non-assigning TICs, therefore, retained the right to enforce the TIC Agreement, including the right to enforce § 7's assignment requirements. Second, even assuming that the non-assigning TICs could somehow ratify the Rollup retroactively, the Rollup would still be ineffective because it violated the Trust's third-party beneficiary rights.

As explained by the Ohio Supreme Court in Hill v. Sonitrol of Southwestern Ohio, Inc., 36 Ohio St. 3d 36, 521 N.E.2d 780 (1988), courts employ an "intent to benefit" analysis when determining if a third-party beneficiary may enforce rights under a contract. A court must focus on whether "the promisee intends that a third party should benefit from the contract." Hill, 36 Ohio St. 3d at 40. If so, "that third party is an 'intended beneficiary' who has enforceable rights under the contract. If the promisee has no intent to benefit a third party, then any third-party beneficiary to the contract is merely an 'incidental beneficiary,' who has no enforceable rights under the contract." Id. Merely conferring some benefit on the supposed beneficiary by performing a particular promise

---

[2] This decision does not address the Trust's myriad additional theories regarding the validity of the Rollup, including, but not limited to, its assertions that the Loan was incorporated into the TIC Agreement and/or that the Loan constitutes a covenant running with the land.

3

in the contract is insufficient; "rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary." Id. (quoting Norfolk & Western Co. v. United States, 641 F.2d 1201, 1208 (6th Cir. 1980)) (internal quotation marks omitted).

"Courts generally presume that a contract's intent resides in the language the parties chose to use in the agreement." Huff v. FirstEnergy Corp., 130 Ohio St. 3d 196, 200, 957 N.E.2d 3, 6-7, *reconsideration denied*, 130 Ohio St. 3d 1479, 957 N.E.2d 1170 (2011) (citing Shifrin v. Forest City Ents., Inc., 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992). "Ohio law thus requires that for a third party to be an intended beneficiary under a contract, there must be evidence that the contract was intended to directly benefit that third party. Generally, the parties' intention to benefit a third party will be found in the language of the agreement." Huff, 130 Ohio St. 3d at 200.

Section 12.15.2 of the TIC Agreement unambiguously states that any lender secured by the Chiquita Center is an intended third-party beneficiary of the TIC Agreement. The Trust qualifies, and because the Trust, which had no notice of the Rollup, did not waive its rights as a third-party beneficiary to enforce the terms of the TIC Agreement, it remained, and remains, entitled to enforce it. The Trust can insist that any transfer of a TIC interest comply with § 7 of the TIC Agreement. In turn, it can insist that any transfer first receive written lender approval. See also In re Jundanian, 2012 WL 1098544 (Bankr. D. Md. Mar. 30, 2012) (holding that an attempt to transfer ownership interests that were restricted under an operating agreement was invalid). The Rollup failed to satisfy this enforceable requirement.

4

Case 4:13-bk-00851-SHG    Doc 516    Filed 08/06/13    Entered 08/06/13 13:54:21    Desc
Main Document    Page 4 of 6

## VI. CONCLUSION

The main focus of this case has been Debtor's effort to restructure debt secured by the Chiquita Center. Pursuant to this decision, Debtor has no TIC interest in the Chiquita Center and, therefore, it is not property of Debtor's bankruptcy estate. As a result, the Loan cannot be restructured in Debtor's Chapter 11.

In light of this ruling, a status hearing will be held on September 3, 2013 at 10 AM to consider if the case should be dismissed.[3]

Dated and signed above.

Notice to be sent through
the Bankruptcy Noticing Center
to the following:

Dennis M. Breen, III
Breen Olson & Trenton, LLP
4720 N. Oracle Rd., Suite 100
Tucson, AZ 85705-1673

Ronald E. Gold
Frost Brown Todd LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202

Robert M. Charles, Jr.
Lewis and Roca LLP
One S. Church Ave., Suite 700
Tucson, AZ 85701-1611

CW Capital Asset Management
c/o Sam Stern, Senior Vice President
7501 Wisconsin Avenue Suite 500 West
Bethesda, Maryland 20814

---

[3] It is unlikely that dismissal of this case will be the end of the saga between the TICs and the Trust. There is a risk that one or more of the TICs will file its own Chapter 11 case in this or a different jurisdiction. See Gary W. Marsh and David E. Gordon, *Lender Strategies for Dealing with Commercial TIC Bankruptcies*, XXXII ABI JOURNAL 3, 20-21, 100-01, April 2013.

5

| | |
|---|---|
| 1 | Dana M. Fidazzo, Esq. |
| 2 | Venable LLP |
| | 750 E. Pratt Street, Suite 900 |
| 3 | Baltimore, MD 21202 |
| 4 | |
| | Barbara Endoy, Esq. |
| 5 | CBRE, Inc. \| Legal Department |
| | 700 Commerce Drive, Suite 550 |
| 6 | Oak Brook, IL 60523 |
| 7 | |
| | Lori L. Winkelman |
| 8 | Quarles & Brady LLP |
| 9 | One Renaissance Square |
| | Two North Central Avenue |
| 10 | Phoenix, AZ 85004-2391 |
| 11 | |
| | Keith C. Owens |
| 12 | Jennifer L. Nassiri |
| 13 | VENABLE LLP |
| | 2049 Century Park East, Suite 2100 |
| 14 | Los Angeles, CA 90067 |
| 15 | |
| | Office of the U.S. Trustee |
| 16 | 230 N. First Avenue, Suite 204 |
| | Phoenix, AZ 85003 |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |